IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02811-PAB-NRN

CAROL KLESSER,

      Plaintiff,

v.

HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation,

      Defendant .

---

## ORDER

---

      This matter comes before the Court on Defendant's Partial Motion to Dismiss
Plaintiff's Second Amended Complaint [Docket No. 63]. The Court has jurisdiction
under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

      Plaintiff Carol Klesser began working at Hewlett-Packard Company in July 1997.
Docket No. 60 at 3, ¶ 11. After the company was split into two entities in 2015, she
worked for defendant Hewlett Packard Enterprise Company until July 21, 2017, when
she was terminated. *Id.*, ¶ 12.

      Throughout her employment, plaintiff was never informed that her performance
was less than satisfactory. *Id.*, ¶ 15. She consistently received performance reviews
indicating that she was performing at a satisfactory level or better. *Id.*, ¶ 14. In

---

[1]The facts stated below are taken from plaintiff's second amended complaint,
Docket No. 60, and are presumed to be true for the purposes of defendant's motion to
dismiss.

December 2016, plaintiff received a performance review that she was doing a "great" job and that her team was "very valuable." *Id.* at 6, ¶ 40. Plaintiff received company shares and a monetary bonus as a reward for her performance. *Id.*

Also in December 2016, plaintiff was informed by her supervisor, Ms. Kelly Ducourty, that plaintiff's salary was "much lower" than the salaries of her male peers. *Id.*, ¶ 41. Ms. Ducourty promised plaintiff that, in February, she would process an off-cycle pay increase to remedy the disparity. *Id.*

In February 2017, Ms. Ducourty promoted Mr. Hedley Potts to supervise plaintiff and other individuals. *Id.*, ¶ 43. Ms. Ducourty did not increase plaintiff's salary. *Id.*, ¶ 44. On March 1, 2017, plaintiff informed Mr. Potts that Ms. Ducourty had promised her a raise because she was the lowest paid employee of the employees who directly reported to Mr. Potts. *Id.* at 7, ¶¶ 45-46. Other than plaintiff, all of Mr. Potts's direct reports were men. *Id.*, ¶ 46. On or about March 16, 2017, plaintiff spoke with defendant's Human Resources Vice President, Ms. Seema Iyer, about Ms. Ducourty's promised raise. *Id.*, ¶ 49. During this conversation, plaintiff questioned whether the pay discrepancy between herself and her male colleagues was based on her gender. *Id.*, ¶ 50. She also questioned whether her "potential termination"[2] was based on her gender. *Id.*, ¶ 51. Ms. Iyer informed plaintiff that there was no money for a raise, but assured plaintiff that she was not scheduled for a layoff because she was "too good" of a manager to be terminated. *Id.*, ¶¶ 53-54.

In mid-March 2017, Mr. Potts informed plaintiff that she had to find a new

---

[2] It is unclear from the complaint what plaintiff refers to when she mentions "her potential termination."

position. *Id.* at 8, ¶ 55. Mr. Potts stated that plaintiff had "been at the company too long and need[ed] to move on," as he was "looking for younger talent with a fresh set of eyes on things." *Id.*, ¶ 56. Mr. Potts told plaintiff that she had "until June to find something else" or she would "be laid off." *Id.*, ¶ 61. The next month, Ms. Iyer called plaintiff at her home to encourage her to leave the company. *Id.*, ¶ 62. Plaintiff raised to Ms. Iyer her concerns regarding whether her treatment was based upon her gender or her age. *Id.* At the time, plaintiff was sixty-three years old. *Id.* at 11, ¶ 81.

On July 5, 2017, Mr. Potts conducted plaintiff's mid-year performance review. *Id.* at 10, ¶ 72. Mr. Potts informed plaintiff that she was doing a great job and gave her a rating of "Driver-plus," indicating that, if she kept up her performance, she would be rated "Accelerating" at the end of the year. *Id.* On July 10, 2017, Mr. Potts notified plaintiff that her position had been eliminated and that she was terminated. *Id.*, ¶¶ 74-75. After plaintiff's exit, she was replaced by a younger male employee. *Id.,* ¶ 77.

At the time of her termination, plaintiff was earning a base salary of $167,472. *Id.* at 4, ¶ 20. The annual salary of one similarly situated male employee was at least $40,000 more than plaintiff's salary, and two other similarly situated male employees earned at least $80,000 more per year than plaintiff. *Id.* at 4, ¶¶ 21-22; at 5, ¶ 28.

On November 22, 2017, plaintiff filed a lawsuit against defendant, raising claims under the Equal Pay Act, 29 U.S.C. §§ 206(d), 215(a)(3) ("EPA") . Docket No. 1. Upon plaintiff's motion, Docket No. 30, the Court administratively closed the case pending the conclusion of plaintiff's EEOC proceedings. Docket No. 31. The case was reopened on October 22, 2018. Docket No. 40.

Plaintiff filed her amended complaint on February 7, 2019. Docket No. 60. She raises claims under the EPA, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"). *See id*. Plaintiff claims that, as a result of her efforts to oppose violations of these laws, she was terminated. *Id.* at 11, ¶ 87. She further alleges that, after she opposed these violations, the defendant withdrew its offer to pay her severance. *Id.* at 11, ¶¶ 85-86. On February 21, 2019, defendant filed a partial motion to dismiss under Fed. R. Civ. P. 12(b)(6). Docket No. 63. Plaintiff filed a response to the motion on March 14, 2019, Docket No. 64, to which defendant replied on March 28, 2019. Docket No. 66.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [her] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191

(quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

## III.  ANALYSIS

### A.  Failure to State a Claim

Defendant argues that plaintiff's Title VII retaliation claim should be dismissed for failure to state a claim.  Docket No. 63 at 7.  "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192.  To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008) (quoting *Meiners v. Univ. of Kan*, 359 F. 3d 1222, 1229 (10th Cir. 2004).  Defendant contends that plaintiff has not alleged facts that, if true, would establish that plaintiff engaged in protected opposition to discrimination or that there was a causal connection between any protected activity and an adverse employment action.  Docket No. 63 at 7.

#### 1.  Protected Activity

First, defendant argues that plaintiff failed to adequately plead that she engaged

in protected activity.  Specifically, defendant argues that plaintiff's conversation with Ms. Ducourty does not constitute protected activity and, further, that plaintiff's conversations with Mr. Potts and Ms. Iyer cannot constitute protected activity.  Docket No. 63 at 7, 9. Because plaintiff responds that her conversations with Mr. Potts and Ms. Iyer do constitute Title VII protected activity, Docket No. 64 at 5, the Court focuses on the factual allegations surrounding those interactions.

In her complaint, plaintiff alleges that she informed Mr. Potts that Ms. Ducourty had promised her a raise because she was paid less than Mr. Potts's other direct reports, all of whom were men.  Docket No. 60 at 7, ¶ 46.  Plaintiff also alleges that she asked Ms. Iyer about the promised raise and "questioned whether the pay discrepancy was based on her gender," *id.,* ¶¶ 49-50, and asked whether her "potential termination" was based on her gender.  *Id.*, ¶ 51.

Defendant argues these actions "lack the requisite proximity to the adverse action to form the basis of a retaliation claim."  Docket No. 63 at 9-10.  Defendant contends that plaintiff "does not allege that at any point prior to Mr. Potts alerting her of her termination she complained of discrimination or unequal treatment based upon her gender" *id.* at 10, and that "[m]erely complaining about a promised pay increase, without more, does not sufficiently establish protected activity."  *Id.* at 11.

Protected activity is defined as either (1) participation in a Title VII investigation or proceeding or (2) opposition to practices unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  "Complaints regarding work-place procedures that are unrelated to race, color, religion, sex, or national origin, are not protected activities under Title VII."  *Harp*

*v. Dep't of Human Serv., Colo. Mental Health Institute at Pueblo*, 932 F. Supp. 2d 1217, 1230 (D. Colo. 2013). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice." *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *Anderson v. Acad. Sch. Dist.*, 122 F. App'x 912, 916 (10th Cir. 2004) (unpublished) "[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim."). The Tenth Circuit has held, however, that "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007) (quoting *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)).

Defendant argues that plaintiff's "incidental comment that her peers were all male did not directly, or indirectly, allege discrimination." Docket No. 63 at 11. This characterization of plaintiff's alleged facts is incomplete. Plaintiff did not merely make a comment that her peers were all men – she mentioned to two superiors that her salary was lower than each of her similarly situated male colleagues and, for this reason, she had been promised a raise. Further, she asked a superior whether her lower pay was based upon her gender and whether her "potential termination" was based upon her gender.[3] These are much more than vague or general complaints about workplace

---

[3]Defendant argues that two of plaintiff's allegations – namely, that she informed Mr. Potts that she was promised a pay raise by Ms. Ducourty and that she questioned whether her lower pay was based on her gender – should be stricken as untimely because plaintiff did not obtain consent from defendant or leave of court to file her

conditions. Such statements put defendant on notice that it was engaging in an unlawful practice under Title VII. This is sufficient to constitute protected activity. *See PVNF*, 487 F.3d at 804; *Servello v. New York State Office of Children and Family Services*, 2019 WL 974972, at *7 (N.D.N.Y. Feb. 28, 2019) (informal complaints to management about pay inequity constituted protected activity under Title VII). Drawing all inferences in plaintiff's favor, the Court finds plaintiff sufficiently alleged that she engaged in protected activity under Title VII.

### 2. *Causal Connection*

Defendant also argues that, even if the Court finds that plaintiff engaged in protected activity, there is no causal connection between that protected activity and an adverse employment action. Docket No. 63 at 11-12. Defendant does not dispute that plaintiff suffered an adverse employment action. However, defendant argues that the sole adverse employment action suffered by plaintiff was her termination on July 10,

---

second amended complaint [Docket No. 60]. Docket No. 63 at 4, n.4; *id.* at 5, n.5. Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course within . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). When plaintiff filed her first amended complaint [Docket No. 44], she did so with leave of court. Docket No. 43. Thus, plaintiff's first amended complaint was not filed "as a matter of course," and she was entitled to file her second amended complaint [Docket No. 60] as a matter of course within 21 days of defendant's partial motion to dismiss [Docket No. 52]. *See DeMaestri v. Aargon Agency, Inc.*, No. 12-cv-00736-WYD-KMT, 2012 WL 3011758, at *1 (D. Colo. July 23, 2012) (reversing minute order striking plaintiff's second amended complaint upon finding that, because plaintiff's first amended complaint had been submitted in response to a court order directing plaintiff to cure deficiencies, plaintiff had not yet "avail[ed] himself of his Rule 15(a)(1) right to amend his pleading once as a matter of course."). Thus, the Court will not strike the allegations at issue. Nor will the Court strike the allegations on the basis that they are "inconsistent" with the plaintiff's charge, as the Court finds no support for the argument that they are inconsistent.

2017.  Docket No. 66 at 5.  Plaintiff contends, however, that an adverse employment action occurred when Mr. Potts informed plaintiff in mid-March 2017 that she needed to find new employment.  Docket No. 64 at 7.

Whether an action constitutes an adverse employment action is determined on a case-by-case basis.  *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005).  It does not include "a mere inconvenience or an alteration of job responsibilities," and must be "'materially adverse' to the employee's job status."  *Id.* (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)).  For example, an adverse employment action may be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004).

"A retaliatory motive may be inferred when an adverse action closely follows protected activity."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  But "[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation."  *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).  The Tenth Circuit has determined that a one-month period between the protected activity and adverse action may, by itself, establish causation, *see PVNF*, 487 F.3d at 804, but has also determined that a three-month period between the protected activity and adverse action, alone, could not establish causation, *see Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

As noted earlier, plaintiff participated in protected activity on March 1 and March 16, 2017. Even if the temporal proximity between plaintiff's protected activity in mid-March and her termination in July is insufficient by itself to establish an inference causation, plaintiff cites statements between mid-March and July that support such an inference. One month after plaintiff's first protected activity, Mr. Potts informed plaintiff that she needed to find new employment. One month later, Ms. Iyer encouraged plaintiff to leave the company. This is sufficient "additional evidence" to establish a nexus between the protected activity and the adverse employment action. *Conner*, 121 F.3d at 1395. Accordingly, there is sufficient evidence to create an inference of retaliation here, and plaintiff sufficiently stated a claim for retaliation under Title VII.

**B. Administrative Exhaustion**

Defendant also argues that plaintiff's Title VII claim based upon discriminatory pay should be stricken for failure to exhaust her administrative remedies before the EEOC. Docket No. 63 at 14. Defendant argues that plaintiff failed to raise before the EEOC any issue regarding disparate pay and instead only raised the issue of her termination. *Id.* at 14-15.

"The exhaustion rule derives from two principal purposes:" (1) "to give notice of the alleged violation to the charged party;" and (2) "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith v. Cheyenne Retirement Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (internal quotation omitted).

The Court "liberally construe[s] charges filed with the EEOC in determining

whether administrative remedies have been exhausted as to a particular claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). However, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* "The ultimate question is whether 'the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Smith*, 904 F.3d at 1164-65 (quoting *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993), *overruled on other grounds as recognized by Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003) (alteration in original)). The court's inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Jones*, 502 F.3d at 1186.

In her EEOC charge,[4] filed on December 15, 2017, plaintiff checked the box that indicated that the charge of discrimination was based, in part, on sex. Docket No. 63-1

---

[4]Plaintiff did not attach any documents to her complaint. Defendant attached plaintiff's EEOC charge to its motion to dismiss, which the Court may properly consider. "[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading." *Lorusso v. Boulder Brands, Inc.*, No. 15-cv-00679-MSK-KMT, 2017 WL 4334070, at *1 (D. Colo. Feb. 27, 2017). In plaintiff's response to defendant's motion to dismiss [Docket No. 64], she attached a supplemental affidavit in which she goes into greater detail as to defendant's pay discrimination. "[T]he Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in [her] complaint." *Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1057 n.8 (10th Cir. 2013). Plaintiff did not reference this affidavit in or attach it to her complaint, nor did defendant attach the affidavit to its motion to dismiss. As a result, the Court does not consider plaintiff's supplemental affidavit in determining whether her pay discrimination claim was exhausted before the EEOC.

at 1. She alleged that she was informed by a supervisor in December 2016 that her salary was "much lower" than the salaries of her male peers. *Id.* at 3. She alleged that her "annual salary was at least $80,000 less than similarly situated male employees." *Id.* at 4. She referred to this discrepancy as a "disparate pay practice," *id.*, and also referenced defendant's "discriminatory pay practices." *Id.* at 6. The Court finds that plaintiff's allegations, taken together, would reasonably spark an investigation into defendant's alleged discriminatory pay practices. *See Smith*, 904 F.3d at 1164 ("[T]he charge . . . contain[s] facts concerning the discriminatory . . . actions underlying each claim.") Plaintiff sufficiently alleged facts that set out a claim of sex discrimination. Thus, plaintiff's conduct alleged in the lawsuit – that her employer unlawfully discriminated against her under Title VII by paying her less than her male colleagues – falls within the scope of an EEOC investigation that could reasonably be expected to occur upon the filing of plaintiff's charge.

Defendant also argues that plaintiff failed to exhaust her claim of discriminatory pay practices because she failed to "note that her Title VII claim was based upon specific discriminatory act(s), as related to her compensation, arising within the 300 days preceding her charge." Docket No. 63 at 15. In its reply, defendant further argues that plaintiff did not "raise before the EEOC that a specific manager made a discriminatory decision to intentionally pay her less than similarly situated men." Docket No. 66 at 9.

Defendant cites no authority that stands for the proposition that a plaintiff must allege specific facts to satisfy every element of Title VII – in other words, that a plaintiff must meet the Rule 12(b)(6) standard – when filing a charge of discrimination before

the EEOC. "[T]he EEOC has broad discretion to determine the content and form of a charge." *Jones*, 502 F.3d at 1183-84. "EEOC regulations state that a charge 'should contain' particular information,"[5] "[b]ut even if a charge fails to contain the specified information, it may still be sufficient, provided it is a 'written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* at 1184 (citing 29 C.F.R. § 1601.12(a)-(b)). Here, although plaintiff's charge does not contain each piece of information required by the EEOC, such as specific dates of pay discrimination, it is nevertheless sufficient, as it identifies the parties and describes generally the actions that form the basis of plaintiff's complaint.

Further, as to defendant's claim that plaintiff failed to allege any act that occurred in the 300 days preceding her charge, under Title VII, "an unlawful employment practice occurs, with respect to discrimination in compensation . . ., when an individual is affected by application of a discriminatory compensation decision or other practice,

_____

[5]A charge should contain the following information:
(1) The full name, address and telephone number of the person making the charge . . .;
(2) The full name and address of the person against whom the charge is made, if known . . .;
(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . .;
(4) If known, the approximate number of employees of the respondent employer . . .; and
(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.
29 C.F.R. § 1601.12(a).

including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(3)(A). Accordingly, taking plaintiff's wage discrimination claims as true, defendant committed an unlawful employment practice each time it issued plaintiff a paycheck. Though plaintiff did not allege in her EEOC charge exact dates of pay discrimination, dates are not required if the charge sufficiently "describe[s] generally the actions or practices complained of." *Jones*, 502 F.3d at 1184. Construing her charge liberally, *id.* at 1186, the Court finds that plaintiff's charge of pay discrimination would initiate a reasonable investigation as to whether she was being discriminated against based on her sex, and, accordingly, plaintiff administratively exhausted her claims before the EEOC.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 63] is **DENIED**.

DATED September 17, 2019.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge